■ HERSHEY FARMS, INC., et al., Respondents, v. ALAN LEDERMAN, Appellant, and QUEENSBORO FARM PRODUCTS, INC., Respondent.— In an action for a declaratory judgment, defendant Alan Lederman appeals from a judgment of the Supreme Court, Nassau County, dated January 6, 1971 and made after a nonjury trial, in favor of plaintiff Hershey Farms, Inc., including dismissal of said defendant's counterclaim for accrued and unpaid salary. Judgment modified, on the law and on the facts, by striking the words "counterclaim and" from the fourth decretal paragraph thereof and adding thereto a provision awarding defendant Alan Lederman recovery against plaintiff Hershey Farms, Inc., in the sum of $6,500. As so modified, judgment affirmed, without costs. As part of the consideration for the sale of the greater portion of the milk business of plaintiff Hershey Farms, Inc., to defendant Queensboro Farms Products, Inc., the latter agreed to pay defendant Lederman $12,000 a year for five years not to compete with it, and also lend Hershey $60,000. As part of the loan transaction, Hershey executed a note for $40,000, which was signed by Justin Lederman and Nathan Lederman, the sole stockholders of Hershey, a family or closed corporation, and by Alan Lederman, purportedly an employee of Hershey having no proprietary interest therein. Nathan and Justin also agreed to hold Alan harmless on his indorsement of the note. By separate letter agreement, dated September 6, 1968, Alan and Justin agreed that each would draw equally from the new and limited business of Hershey and that the first $12,000 of salary due Alan each year would be considered as having been received by him by way of the Queensboro payments to him not to compete. In December, 1968 the $40,000 note to Queensboro came up for renewal for the unpaid balance of $19,000. Alan refused to indorse the renewal note unless the arrangements under the September 6, 1968 letter agreement were modified so as to permit him to receive a weekly salary of $260 plus the $12,000 yearly from Queensboro. Justin (with Nathan's approval) assured Alan that if he signed the new instrument such modification would be made. Relying upon such assurance Alan signed it. However, Justin thereafter refused to pay him the weekly salary of $260. Although the trial court held that Justin deliberately misled Alan into signing the renewal note, it concluded that Justin could not be estopped to deny waiver of the salary provision contained in the September 6 letter agreement, since Alan was not misled to his detriment. We disagree with the trial court's conclusion. Had Alan persisted in his refusal to execute the new note, he could have relied on Justin's and Nathan's agreement to hold him harmless

in the event Queensboro would demand payment of the original note's unpaid balance. This indemnification agreement was totally effective and protective insofar as Alan was concerned, since sufficient moneys were due Justin and Nathan from Queensboro and could be used by it to satisfy any balance due under the original note. Furthermore, it should be noted that Hershey and Justin were benefited by Alan's signing the renewal note, since their obligation to pay Queensboro under the original note was extended. We therefore conclude that, since Alan executed the renewal note on Justin's assurance that he would thereafter receive *inter alia* a weekly salary of $260, his counterclaim for unpaid and accrued wages should have been granted in the amount hereinabove awarded (cf. *Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 292). Hopkins, Acting P. J., Latham, Christ and Brennan, JJ., concur; Benjamin, J., dissents and votes to affirm the judgment.